Mr. Justice Scott delivered the opinion of the Court. The defendant, having been indicted, under the 8th section of the Gaming Act, for betting money on a game of chance called Pocre, interposed the plea of not guilty, in which the State joined, which was submitted to a jury. The prosecuting attorney then, with leave of the court, entered a nolle prosequi as to one F. L. Neal, against whom alike prosecution was pending; and having had him sworn as a witness on behalf of the State, and informing him that the nolle prosequi as to him had been entered, and that no indictment, for any similar offence, would be thereafter preferred against him on a charge of its having been committed prior to that day, asked him the following question, to wit: “ Have you seen the defendant, Hamilton G. Quarles, bet money with any person or persons at a cer-jtain game of chance played with cards, called Poore, in the county of Union, State aforesaid, within twelve months next before die 1.6th day of April, A. D. 1851 ?” This question, the witness refused to answer, “ for fear that he would thereby criminate himself,” as he alleged; and the court refusing to compel him to do so, as moved on the part of the State, the point of law was saved by bill of exceptions. No further evidence having been offered,_the jury found for the defendant, and the State appealed. Whether the court erred or not, in thus ruling, is the question; and it involves considerations of some importance connected with constitutional law, and the administration of criminal justice. On the part of the State, it is insisted that the witness ought to have been compelled to answer the question, because, under the law, as altered by our statute, it was hot possible that the answer could have had any tendency to criminate him, and as it related to matter that was relevant and material to the issue, it was not his privilege to refuse, because of any tendency of the answer to degrade his character. On the other side, it is contended that our statute has not materially changed the common law rule on this subject; and, moreover, that it is beyond the competent power of the legislature to enact a law under which a witness could be compelled to answer a question which he might think would criminate himself. The provision of the statute in question, is in the following words, to wit: “ In all cases where two or more persons are jointly or otherwise concerned in the commission of any crime or misdemeanor, either of such persons may be sworn as a witness in relation to such crime or misdemeanor, but the testimony given by such witness shall in no instance be used against him in any criminal prosecution for the same offence.” Doubtless these provisions of law were designed by the legislature to remedy some of the numerous hindrances to the administration of criminal justice, as well incident to the true privileges of the witness, as growing out of the enormous abuses which are known to have been sometimes perpetrated under color of privilege, and are therefore properly entitled to be so construed as to advance the remedy and suppress the mischief. But as the privilege thus designed to be regulated, is one of constitutional guarantee, its efficiency cannot be impaired under any pretence of regulation; while, at the same time, like the right of trial by jury, the right to keep and bear arms, and like every other right reserved to the citizen, it is subject to such legislative regulation as may be demanded by the exigencies of society, as may not essentially invade its true nature. If this were not so, there could be no legislation as to the assembling of a grand jury, none as to the form of an indictment, or as to the qualification of petit jurors, or as to the carrying of concealed weapons, or as to numerous other matters connected with the practical operation of the government, thereby rendering such frequent resort to the people in conventions necessary, as almost to destroy the value of limited constitutional government for a people so progressive as our own. It is necessary, then, that we shall discover, if we can, the true nature of this constitutional privilege of the witness, before we construe these regulations of the legislature, which concern it. The Bill of Rights does not, in terms, recognize any privilege for a witness. The provision is this, to wit: “That, in all criminal prosecutions, the accused hath a right to be heard by counsel, &c., &c., and shall not be compelled to give evidence against himself.” This places a restriction upon the power of the legislature to the extent that no law can be enacted by that body to compel one accused to give evidence against himself; .and, by necessary implication, also prohibits any law by which a witness in any prosecution should be compelled to disclose criminal matters against himself, so long as it might remain lawful that such disclosures could be afterwards produced in evidence against him in case he in turn should become the accused party; •otherwise, the power to compel self-accusation would still remain in the legislature to be exerted in this indirect manner. Hence, it seems inevitable that, although witnesses are not expressed in the terms of the provision of the bill of rights, that we are considering, yet they are substantially embraced to the full extent of a complete guarantee against self-accusation. Consequently, so long as the common law rule might prevail, that voluntary disclosures of a witness in a criminal prosecution may be used ■as evidence in an after prosecution against him, when he, in turn, had become the accused party, he would be as much entitled to this guarantee, when interrogated as a witness, as the accused party. But when this rule of the common law should have been so changed by legislative enactment, as to make unnecessary any appeal whatever on the part of the witness to his constitutional guarantee — as by regulations securing to him otherwise and effectually all that was guaranteed by the Bill of Rights — he could have no greater reason to complain than he would have had had the law remained unchanged, and under its operation he had never had any occasion to take shelter under the guarantee. And in such case, there couldbe nomore ground upon which to suppose a want of competent power in the legislature to make such regulations than there would be in case that body were to repeal the statute of gaming, and by this means deprive the gambler of his constitutional privilege to be accused and tried for a criminal of-fence, which has no longer existence. In either case, all that could be said would be, as to the gambler, that the courts could not indulge him in the luxury of a constitutional accusation and trial, wherein he could display his skill in breaking through the meshes of the law, for the reason that he had committed no offence then known to the- law. And as to the witness, that be could not be indulged with the arm of the law to prevent his being ravished of matters tending to a crimi-nation of himself, for the reason that nothing, that could be wormed out of him, could possibly have that effect. In a word, in neither case, there being no invasion of right or privilege, could there be any place for vindication: and there being no encroachment upon any right retained by the citizen, and no pretence of any transgression of any of the higher powers delegated to the legislature, such acts would be clearly without the pale of prohibition and within the scope of authority. The privilege in question, in its greatest scope, as allowed by the common law — and no one, be he witness or accused, can pretend to claim it beyond its scope at the common law — never did contemplate that the witness might not be proved guilty of the very crime about which he may be called to testify; but only that the witness should not be compelled to produce the evidence to prove himself guilty of that crime. His privilege, therefore, was not an exemption from the con-' sequences of a crime that he might have committed; but only an exemption from the necessity of. himself producing the evidence to establish his own crime. And it is founded upon the general sense of enlightened men, that compulsory self-accusation of crime is not only at war with the true charities of religion, but has been proven to be impolitic by the truths of history and the experience of common life. It is not possible, then, that another person can have any color of claim to exemption from the consequences of his crime, founded upon this personal privilege of the witness, which does not include any such exemption even for the witness himself. And if, from time to time, crime has been sheltered under this color either by the ignorance of the witness, his morbid fears, or his outright perjury, such has not been the legitimate result of the true privilege, but of the manner in which it has heretofore been allowed by law to be made available. And, surely, the remedy for any such evils is as legitimately within legislative authority as any, which may flow in •upon the body politic from the abuse of any other right reserved to, or designed to be secured for the citizen. So long as it might be lawful to produce in evidence against an accused party, whatever he might before have voluntarily said as a witness on a prosecution against another, there were no means by which the privilege could be made available short of a claim by the witness to be silent; and as that was the rule of the common law, this was the common law mode of making the privilege available. And that silence was but a mode of making the privilege available, and was not of the essence of the privilege itself, is conclusively proven by all that current of enlightened authority, to which we yield our fullest assent, which hold that the privilege has ceased when the crime has been pardoned, when the witness has been tried and acquitted, or is adjudged guilty, or when the prosecution, to which he was exposed, has been barred by lapse of time. And by those which hold that when the transaction, to which the witness is interrogated, forms *a part of the issue to be tried, the witness will be compelled to-give evidence, however strongly it may reflect upon his character. United States vs. Smith, 4 Day's R. 121. Roberts vs. Allatt, 1 Moody & Mack. 192. People vs. Mather, 4 Wend. R. 229, 252, 4 and 5. 1 Greenl. Ev., 5 ed., p. 574, sec. 454, and the authorities referred to there in the note to sustain the text. But the legislature has so changed the common law rule, by the enactment in question, in the substitution of a rule that the testimony, required to be given by the act, shall never be used against the witness for the purpose of procuring his conviction for the crime or misdemeanor to which it relates, that it is no longer necessary for him to claim his privilege as to such testimony, in order to prevent its being afterwards used against him. And! the only question that can possibly arise under the present state of the law, as applicable to the case now before us, is as to-whether our statutory regulations afford sufficient protection ta the witness, responsive to this new rule and to his constitutional guarantee against compulsory self-accusation. If they do, time and experience will attest whether or not the new rule will be more conducive than the old one, to the reasonable ends of jus-* tice. With regard to such evidence as a participant in crime maybe required to give before a grand jury, in the provisions requiring that body to keep minutes of their proceedings and of all evidence produced before them, and which authorize any of the members to testify as to any evidence that may have been pro-* duced before that body, there would seem to be the most ample means for the protection of the witnesses. And there is, substantially, no less ample means of protection as to such evidence as may be required to be given before a coroner, or committing magistrate. And although, upon a trial before the Circuit Court there are no like statutory regulations for the preservation of the testimony, it is there most usually produced in the hearing of a greater number of persons : and besides, in any case where more than ordinary precautions may be thought expedient or necessary, the powers of the Circuit Court are ample for the complete preservation of every item of evidence that might be produced. There can then be no ground for apprehension for the safety of the witness from this source. Nor can there be any greater cause for apprehension from any supposed possibility or probability that the true privilege of the witness may be invaded under the operation of the new rule, by the practical effect of his evidence, either direct or indirect, in opening up to the State, avenues to light leading to evidences of other crimes or misdemeanors, upon which prosecutions might be afterwards founded against the witnesses, that might otherwise remain closed and unsuggested. Because, when the course of examination would lead to any inquiry as to any matter materially connected with any crime or misdemeanor, other than that which was the subject of direct inquiry before the court, — as, when such matter might be indispensable for the elucidation of some material matter already produced in evidence by the witness and directly involved in the issue — the witness could claim his privilege as to such matter as fully as if he had been enquired of in chief touching such other crime or misdemeanor. And if bis claim of privilege, in either case, were overuled by the court, and he should be made to testify by the order of the court, he would be as effectually sheltered from any such testimony upon common law principles, as if that case also was embraced in the provisions of our statute. Because such testimony would not be voluntary, but obtained by compulsion, and for that reason coiild never be lawfully used against him in any way to his prejudice. See the case of Regina vs. Edmund Garbet, (2 Car. & Kir. N. R. 474,) where this doctrine was elaborately discussed and fully examined before the fifteen judges of England, in the year 1847. And when the effect of the witness’ testimony would not substantially amount to the furnishing of an item in a consecutive series of proofs tending to his conviction for another crime or misdemeanor, it would be so remote, contingent, and intangible, as scarcely to be of capacity to be considered of as legitimately resulting from bis testimony in legal contemplation, in any sense to invade Ms true privilege. At any rate, we can safely say, it would not prima facie be so. And the argument to maintain the contrary, can only be supported by assuming that the privilege is absolute and unqualified, which is not only legally untrue as to it, but untrue as to every other right and privilege of the citizen, because they are all but component elements, not of natural liberty, but of civil liberty. And the. error of the hypothesis will abundantly appear in the absurdities evolved in carrying out,, to its inevitable result, any given right or privilege of the citizen when so based. If, for instance, it were broadly admitted that the privilege in question was so based, and hence would be invaded whenever the incidental effect of the testimony of the witness might in any degree be suggestive of sources of light that, when pursued, might lead to evidences upon which prosecutions might afterwards be founded against the witness for other crimes or misdemeanors: and also, (as contended for on the other side,)' that the witness is to be the sole judge of the occasion for the exercise of his privilege, it would be difficult to drive the machinery of government forward in its ordinary course. A court, for instance, might th-m lawfully refuse to try a cause, lest its investigation, by the instrumentality of the jury and witnesses, might be suggestive of inquiries that might ultimately lead to evidence upon which a criminal prosecution might be af-terwards founded against its presiding judge. And for a like reason, the Executive might feel lawfully authorized to withhold his ordinary communications from the legislature: and even that body might lawfully decline to perform its ordinary duties upon the same grounds — especially if the true privilege not only authorizes the citizen to withhold criminating matter, but also any matter that might have a tendency to degrade — because, the very remedies for the future would often be suggestive of the errors.of the past, and these might not all be of an excusable cast. But to all objections of this class, it is a conclusive answer to say that, if, beyond reasonable foresight, any such cases should arise under the operation of our statute rule, as would seem to be clearly within its equity, although not embraced within its strict letter, all such special and unlooked for cases would be as fully within its provisions, as if embraced by its terms, and witnesses in such extreme cases would doubtless obtain full protection from the courts. Holding, therefore, that our laws sufficiently guard witnesses from self-accusation within the meaning of the constitution, to make it lawful for the courts to compel them to testify as to all matters embraced by the provisions of our statute on that subject, we think that the court below erred in refusing to make the witness answer the question propounded to him in this case, and for that error, the judgment of the Circuit Court must be reversed, and the cause remanded to be proceeded with. Note — The State vs, Jones, and the State vs. Smith, went off on the same question.